IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

TWIN HEAD RECOVERY, LLC,

        Plaintiff,

v.                                      CIVIL ACTION NO. 5:09-cv-00572

JHJ, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are two motions to dismiss: one motion, [Docket 12], from Defendants JHJ, LLC; Jones & Jordan Engineering, Inc.; James A. Jones; Kevin W. Jordan; and Daniel L. Hart; and another motion, [Docket 15], from Defendant Caldwell Trailblazer, LLC. Also before the court is Defendants' Motion to Stay Arbitration Proceeding Pending Court's Ruling on Motion to Dismiss [Docket 42]. The matter being fully briefed and ripe for review, the Court now considers these motions.

*I. BACKGROUND*

This action arises out of a Coal Lease Agreement ("Coal Lease") between JHJ, LLC ("JHJ") and Twin Head Recovery, LLC ("Twin Head"). In the Coal Lease, JHJ leased land in Raleigh County, West Virginia to Twin Head "for the sole purpose of mining and removing . . . all coal minable and merchantable." (Docket 1-3). The Coal Lease was entered into on January 16, 2004.

JHJ acquired the rights to lease the land in the Coal Lease through earlier agreements. The first such agreement occurred on May 9, 2003 where Kevin Jordan, a member of JHJ, bought Parcel

2.0 of Tax Map 47 in Raleigh County ("Parcel 2.0").[1] Then, on May 16, 2003, Jones & Jordan Engineering, Inc. ("Jones & Jordan") entered into an agreement to develop property designated at Parcel 1.0 of Tax Map 47 in Raleigh County ("Parcel 1.0").[2] On January 6, 2004, JHJ entered into a lease agreement[3] for the lease of Parcel 1.0 "for the purpose of removal of natural resources." (Docket 1-2.) These agreements gave JHJ the authority to lease Parcel 1.0 and Parcel 2.0 to Twin Head in the Coal Lease.

The Coal Lease contained a section related to the handling of disputes. This section provides in pertinent part:

> Except as provided below, and except as to monetary obligations which are not in dispute, any controversy or claim arising out of or relating to this Lease, or the breach thereof, including any controversy as to the arbitrability of such controversy or claim, shall be settled by arbitration . . . . The submission to arbitration, as provided in this paragraph, shall be a condition precedent to the resort to litigation by any party to this Lease with respect to any controversy or claim arising out of or relating thereto.

(Docket 1-3, p. 22-23.)

After Twin Head entered into the Coal Lease, Twin Head "secured the services of Jones & Jordan to pursue and obtain a surface mining and property permit on behalf of [Twin Head] in furtherance of its plan to remove the coal." (Docket 1 ¶ 16.) Permits were then issued on November 23, 2004 and March 9, 2005. Twin Head states that Jones & Jordan submitted a release for one of the permits on November 22, 2006, and that Twin Head never authorized this action. Jones &

---

[1] Mr. Jordan bought the property from Mintie Irene Sweeney, Jack Sweeney, Ida M. Hill, Irene Bryant, Bee Sweeney, Irma Arritt, Loretta Sweeney, Richard Bryant, Max Hill, Carol Sweeney, and Ray Arritt.

[2] Jones & Jordan entered into this agreement with Verona Smith, Julius Caldwell, and Georgann Caldwell.

[3] Verona Smith, Julius Caldwell, and Georgann Caldwell were the other parties to this lease.

Jordan then acquired two different permits for the properties on May 24, 2007, and November 28, 2007. Because of these new permits, Twin Head argues that it was required to file a release for some of the property, and that Caldwell Trailblazer, LLC ("Caldwell") has started the process to begin surface mining on the property.

Twin Head claims several causes of action in its complaint: breach of contract, fraud, conspiracy, and breach of fiduciary duty. In the first motion to dismiss, (Docket 12), JHJ, Jones & Jordan, Mr. Jones, Mr. Jordan, and Mr. Hart asked the Court to dismiss the complaint and Twin Head's Emergency Motion for Preliminary Injunction for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12. In the second motion to dismiss, (Docket 15), Caldwell also asked the Court to dismiss the complaint based on Rule 12(b)(6). On February 25, 2010, the Court stayed this matter while the Court was considering the motions to dismiss. Subsequently, Twin Head began arbitration proceedings for this matter on July 23, 2010, which prompted Defendants to file their motion to stay the arbitration. (Docket 42.)

## II. LEGAL STANDARDS

*A. Motion to Dismiss*

Pursuant to Fed. R. Civ. P. 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). The rule requires the plaintiff to allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint; the factual allegations must be taken as true and construed in the light most favorable to the non-moving party. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

Consequently, a motion to dismiss should be granted only if the plaintiff fails to allege enough facts to state a cognizable legal claim that is plausible on its face. *Twombly*, 127 S. Ct. at 1974. "Factual allegations must be enough to raise a right to relief above the speculative level," and if a plaintiff does not "nudge" his claim "across the line from conceivable to plausible," then the complaint should be dismissed. *Id.* at 1965, 1974. "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001).

*B. Arbitration*

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, provides federal courts with the power to compel arbitration in cases where, save for the applicability of an arbitration clause, the case would fall within the court's federal subject matter jurisdiction. In particular, it provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Further, if one party refuses to arbitrate under a written agreement, the other may move for an order compelling the other party to submit to arbitration. 9 U.S.C. § 4. To succeed on a motion to compel arbitration, the moving party must show two things: first, that an agreement was made, and second, that the agreement to arbitrate was breached. *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 939 (4th Cir. 1981) (en banc).

When confronted with a motion to compel arbitration, the district court must first "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate

exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (citations and quotation marks omitted). Because federal policy generally favors arbitration, ambiguities with respect to the scope of the arbitration clause must be resolved in favor of arbitration. *Kepler Processing Co. v. New Market Land Co.*, 2008 WL 4509377 at *3 (S.D. W. Va. Oct. 2, 2008); *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998) (citing *Volt Info. Scis., Inc. V. Bd. Of Trs. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

To determine if an arbitration clause is valid, courts look to the contract formation law of the forum state. *Cara's Notions*, 140 F.3d at 569. Once the arbitration clause is deemed valid, the breadth and scope of the clause are governed by the "federal substantive law of arbitrability." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000). After the court decides that a particular dispute is covered by an arbitration clause, the court may not proceed to consider the merits of the case and must immediately send the case to arbitration. *Adkins v. Labor Ready, Inc.*, 195 F. Supp. 2d 628, 634 (S.D. W. Va. 2001) (citing *AT&T Techs., Inc. v. CWA*, 475 U.S. 643, 649 (1986)). "[W]e leave all questions concerning the scope of an arbitration agreement to the arbitrator, 'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Winston-Salem Mailers Union 133, CWA v. Media Gen. Operations, Inc.*, 55 Fed. Appx. 128, 133 (4th Cir. 2003) (citing *AT&T Techs.*, 475 U.S. at 649-50).

*III. DISCUSSION*

Both motions to dismiss move the Court to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants JHJ, Jones & Jordan, Mr. Jones, Mr. Jordan, and Mr. Hart offer two arguments in support of their motion: (1) Twin Head is not a legal entity; and (2) The Coal Lease requires claims to be arbitrated. Defendant Caldwell offers three arguments in support of its motion: (1) Twin Head was required to submit claims to arbitration; (2) Twin Head does not have a certificate of authority to transact business in West Virginia; and (3) Twin Head failed to plead facts that would establish that the Coal Lease was valid and enforceable at the time of the alleged misconduct and/or filing of this action.

*A.    Twin Head's Legal Status*

The assertion that Twin Head is not a legal entity and does not have a certificate of authority to transact business in West Virginia appears moot. Twin Head states that it has cured the defects with its certificate of authority. The West Virginia Secretary of State's website confirms that Twin Head is a registered LLC in West Virginia with an effective date of June 29, 2004. Because Twin Head's certificate of authority has been reinstated, the Court will not consider these arguments in deciding the motions to dismiss.

*B.    Arbitration*

Both motions to dismiss argue that the complaint should be dismissed because the matter was not first submitted to arbitration. JHJ and Twin Head, as signatories to the Coal Lease, are certainly bound by the arbitration clause in the Coal Lease. The language of the clause specifically states that "any controversy or claim arising out of or relating to this Lease, or the breach thereof, including any controversy as to the arbitrability of such controversy or claim, shall be settled by arbitration."

(Docket 1-3, p. 22.) The claim alleged by Twin Head against JHJ for breach of contract is a direct claim arising from JHJ's alleged violation of the Coal Lease, and is to be determined by arbitration.

Twin Head's argument that the vast majority of its claims do not fall within the Coal Lease's arbitration clause is without merit. Twin Head argues that the claims against Jones & Jordan for breach of oral contract, conspiracy, breach of fiduciary duty, and fraud are not related to the Lease Agreement. However, in the complaint, Twin Head asserts that most of the claims stemmed from Defendants working to hinder Twin Head's rights under the Coal Lease. The Court agrees that not every claim alleged against Defendants would directly relate to the Coal Lease, but a determination of the rights and duties under the Coal Lease through arbitration would aid in clarifying what, if any, cause of action Twin Head has against Jones & Jordan. The Court finds that Caldwell should be included in arbitration because a determination of whether the coal lease is still in place would affect whether Caldwell has the right to mine the property covered by the Coal Lease. In addition, the Court finds that most of Twin Head's claims against Jones & Jordan do not relate to the Coal Lease, therefore, Jones & Jordan are not required to participate in the arbitration. The Court will not dismiss this action, but will stay the matter until Twin Head, JHJ, and Caldwell have completed arbitration relating to the Coal Lease.

  C. *The Validity of the Coal Lease*

Caldwell argues that the complaint should be dismissed because Twin Head did not plead facts to prevent certain clauses in the Coal Lease from becoming enforceable that would bar Twin Head's right to mine the coal. On May 16, 2003, Jones & Jordan entered into a conditional agreement to develop Parcel 1.0. (Docket 1-1.) That agreement contained the following clause:

> It is the intention of both parties to begin work on this project immediately, beginning with mapping, design, and permitting, followed by excavation and

> development as soon as possible. If, however, no expenditures or progress towards development of the property has been made within a period of three (3) years from the date of this document, this agreement shall be null and void, and both parties shall be released from any obligation thereof. Following this initial period and upon commencement of development of the property, if the project shall become dormant for a period of six (6) months, in such a way that no progress toward continued development is being made, then this agreement shall be null and void, and both parties shall be released from any obligation thereof . . . .

(Docket 1-1, pp. 3-4.) This agreement gave Jones & Jordan until May 16, 2006 to make expenditures or progress towards the development of the property. Twin Head seems to allege enough facts to conclude that Jones & Jordan made some progress on development because Jones & Jordan obtained the permits. However, the second part of the clause is somewhat troubling for Twin Head because it states that the contract will be null and void if the project is dormant for a period of six months "in such a way that no progress toward continued development is being made." (Docket 1-1, p. 4.) In its complaint, the only progress Twin Head alleges is Jones & Jordan getting the permits and those permits being issued in November 2004 and March 2005. After March 2005, Twin Head fails to allege that any work was performed in furtherance of the agreements.

On January 6, 2004, Parcel 1.0 was leased to JHJ. (Docket 1-2.) This agreement contained the following clause:

> Removal of natural resources from the property shall commence within two (2) years of the date of this Lease or it shall be deemed null and void. Once said removal commences it shall continue without interruption for a period of more than six (6) months, excluding any interruption caused by Acts of God.

(Docket 1-2, p.2). This agreement gave JHJ until January 6, 2006 to commence the removal of the natural resources, and also contained a provision that the project could not be dormant for more than six months. *Id.* Again, Twin Head does not allege that it began the removal of natural resources, and it also does not allege facts that would suggest that the six-month provision was not triggered.

8

The Coal Lease between JHJ and Twin Head, (Docket 1-3), referenced the earlier agreements that gave Jones & Jordan and JHJ the rights to develop and remove the natural resources from Parcel 1.0. The Coal Lease has a hand-written clause that states "[JHJ] has the authority to enter into this Lease pursuant to its Lease Agreements of May 16, 2003 and January 6, 2004." (Docket 1-3, p.2.) Even though Twin Head is not a party to either of these earlier agreements, Twin Head's rights are potentially affected because of the reference to the agreements in the Coal Lease. In addition, a party can only lease to another that to which it has sufficient rights. *E.g.*, 52 C.J.S. *Landlord & Tenant* § 511 (2010) ("A landlord cannot create any greater interest in the lessee than the landlord himself or herself possesses, and the lessee takes subject to all claims of title enforceable against the lessor."). Thus, JHJ would not be able to lease to Twin Head the right to mine the coal on Parcel 1.0 if JHJ's rights were null and void due to the earlier agreements. However, there is nothing in the record that intimates that similar time restraints applied to Parcel 2.0. The contract for the purchase of Parcel 2.0 does not contain time-limiting clauses like the ones found in the development and lease agreements for Parcel 1.0. (Docket 1-1, p. 8.)

Due to the clauses contained in the earlier Parcel 1.0 agreements, the Court questions whether the Coal Lease is still in place and whether Twin Head has a right to mine the coal for that property. Additionally, it is unclear how the Parcel 1.0 agreements affect Twin Head's rights with regard to Parcel 2.0. For these reasons, the Court is inclined to send this matter to arbitration so that these, along with other issues, can be more fully resolved. The Court believes that enough facts were alleged in the complaint to go forward on the fraud, conspiracy, and breach of fiduciary duty claims; however, these claims will also be stayed until arbitration is complete.

*III.  CONCLUSION*

For the reasons explained above, Defendants' motions [Dockets 12, 15] are **DENIED**, and this action is **STAYED** pending resolution of arbitration and **REMOVED** from the active docket of this Court.  Because the motions to dismiss are denied, Defendants' Motion to Stay Arbitration Proceeding Pending Court's Ruling on Motion to Dismiss, (Docket 42), is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 19, 2010

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE